IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. _____

| | |
|---|---|
| ROBBIE G. PLYLER and DEBORAH PLYLER,<br><br>**Plaintiffs,**<br><br>v.<br><br>COX BROTHERS, INC. d/b/a COX BROTHERS FARM; COX FARM MANAGEMENT, LLC d/b/a COX BROTHERS FARM; COX LAND INVESTMENTS, LIMITED PARTNERSHIP; COX LAND COMPANY, LLC; RUSSELL F. COX, DELANO S. COX, MARION F. COX, and CAMPBELL COX,<br><br>**Defendants.** | **COMPLAINT** |

Plaintiffs, complaining of Defendants, allege and say as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Robbie G. Plyler ("Robbie") is an adult citizen and resident of Kershaw County, South Carolina.

2. Plaintiff Deborah Plyler ("Debbie") is an adult citizen and resident of Kershaw County, South Carolina. Robbie and Debbie are husband and wife, and have been husband and wife at all times pertinent to this Complaint.

3. Defendant Cox Brothers, Inc. d/b/a Cox Brothers Farm ("Farm") is a North Carolina corporation that has been administratively dissolved, but which continues to do business in Union County, North Carolina and which has its principal place of business in Union County, North Carolina. All allegations set forth herein against Farm also refer to and include the principals, agents, employees, servants and independent contractors of Farm, including Defendants Russell F. Cox,, Delano S. Cox, Marion F. Cox, and Campbell Cox, either directly or vicariously, under the principles of agency or *respondeat superior*, for any acts and/or omissions committed by them.

1

4. Defendant Cox Farm Management, LLC d/b/a Cox Brothers Farm ("Farm Management") is a North Carolina limited liability company with its principal place of business in Union County, North Carolina. Upon information and belief, every member of Farm Management is a citizen of North Carolina. All allegations set forth herein against Farm also refer to and include the principals, agents, employees, servants and independent contractors of Farm, including Russell F. Cox, Delano S. Cox, Marion F. Cox, and Campbell Cox, either directly or vicariously, under the principles of agency or *respondeat superior*, for any acts and/or omissions committed by them. Collectively, the Farm and Farm Management are referred to as "Cox Brothers Farm."

5. Defendant Cox Land Investments, Limited Partnership ("Owner") is a North Carolina limited liability company with its principal place of business in Union County, North Carolina. Upon information and belief, each partner in Owner is a citizen of North Carolina. All allegations set forth herein against Farm also refer to and include the principals, agents, employees, servants and independent contractors of Farm, including Russell F. Cox, Delano S. Cox, Marion F. Cox, and Campbell Cox, either directly or vicariously, under the principles of agency or *respondeat superior*, for any acts and/or omissions committed by them.

6. Defendant Cox Land Company, LLC ("Owner Management") is a North Carolina limited liability company with its principal place of business in Union County, North Carolina. Upon information and belief, every member of Owner Management is a citizen of North Carolina. All allegations set forth herein against Farm also refer to and include the principals, agents, employees, servants and independent contractors of Farm, including Russell F. Cox, Delano S. Cox, Marion F. Cox, and Campbell Cox, either directly or vicariously, under the principles of agency or *respondeat superior*, for any acts and/or omissions committed by them.

7. Upon information and belief, Defendant Russell F. Cox ("Rusty") is an adult citizen and resident of Union County, North Carolina. Rusty is the manager of Cox Brothers Farm and oversees the day-to-day operations of the farm. Upon further information and belief, Rusty was (or is) a shareholder of Cox Brothers, Inc., and is an owner of Cox Brothers Farm.

8. Upon information and belief, Defendant Delano S. Cox ("Delano") is an adult citizen and resident of Union County, North Carolina; Delano manages the books and assists with the operations of the farm. Upon further information and belief, Delano was (or is) a shareholder of Cox Brothers, Inc., and is an owner of Cox Brothers Farm.

9. Upon information and belief, Defendant Marion Cox ("Marion") is an adult citizen and resident of Union County, North Carolina; Marion assists with the management and day-to-day operations of the farm. Upon further information and belief, Marion was (or is) a shareholder of Cox Brothers, Inc. and is an owner of Cox Brothers Farm.

10. Upon information and belief, Defendant Campbell Cox ("Campbell") is an adult citizen and resident of Union County, North Carolina; Campbell assists his father, Rusty with the

2

management and day-to-day operations of the farm. Upon further information and belief, Campbell is an owner of Cox Brothers Farm.

11. Collectively, the Farm, Farm Management, Owner, Owner Management, Rusty, Delano, Marion, and Campbell are referred to as "Cox Brothers."

12. Jurisdiction is proper pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13. This Court has personal jurisdiction over Defendants because Defendants transact substantial business in North Carolina, undertook tortious and unlawful conduct in this federal district that harmed Plaintiffs, and have sufficient minimum contacts with and in this federal district.

14. Because none of defendant employers obtained the required workers' compensation coverage for Robbie's injuries and thus failed to comply with the North Carolina Worker's Compensation Act, Robbie is not bound by the exclusive remedy provision in N.C.G.S. § 97-10.1 and may pursue his negligence and other claims before this Court.

15. Venue is proper in this federal district pursuant to 28 U.S.C. §§ 1391(b)(2) and (b)(3) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this federal district and all Defendants are subject to the Court's personal jurisdiction in this action.

16. This is an action to recover substantial damages from the Defendants for their extreme and gross negligence, negligence, and premises liability which resulted in Robbie losing his leg to improperly secured farm equipment.

## FACTUAL ALLEGATIONS

17. Cox Brothers owns and operates a large farm in Union County, North Carolina growing corn, soybean, and wheat and raising hogs and chickens.

18. Specifically, Owner is the record owner of the real property where the farm is located in Union County.

19. Upon information and belief, Owner Management provides certain administrative and management services to Owner.

20. Upon information and belief, the Farm and/or Farm Management do business as Cox Brothers Farm, operate the farm and employ various workers who perform the day-to-day tasks necessary for the farm to continue running.

21. In the alternative, to the extent it is determined that Farm and/or Farm Management do not do business as Cox Brothers Farm or operate the farm or employ various workers who keep

3

the farm running, then it is alleged that Rusty, Delano, Marion, and Campbell (or some combination thereof) have agreed to carry on as co-owners of the farm for profit, and have therefore formed a general partnership doing business as Cox Brothers Farm ("Cox Brothers Farm GP"). Accordingly, all allegations against Cox Brothers Farm are alternatively made against Rusty, Delano, Marion, and Campbell as Cox Brothers Farms GP.

22. Robbie began working for Cox Brothers Farm more than twenty years ago and performed a variety of tasks, but largely maintenance work and general farm work. At all times relevant to this Complaint, Robbie was an employee of Cox Brothers Farm.

*OSHA Regulations*

23. The Occupational Safety and Health Administration ("OSHA ") is a part of the United States Department of Labor and is tasked with regulating and enforcing safe working conditions. OSHA issues regulations specific to various industries and jobs, including agriculture work in connection with grain bins and other grain storage structures.

24. As interpreted by OSHA in a letter of interpretation dated September 29, 2008, "OSHA's standard at 29 CFR 1910.272(g)(1)(ii) provides that, before employees enter grain storage structures, equipment which presents a danger to employees must be deenergized, and 'disconnected, locked-out and tagged, blocked-off, or otherwise prevented from operating by equally effective means or measures.' The standard is not intended to be a prohibition against employees entering grain storage structures while machinery is running. Instead, employees may enter such facilities while machinery is running if the employer can demonstrate that appropriate protection has been provided to prevent employees from being exposed to the hazards/dangers of the moving machinery."

25. According to OSHA, "because of possible poor visibility (e.g., from poor lighting) inside grain storage facilities, employees may have difficulty estimating distances from, or not seeing at all, moving machinery parts. As such, OSHA does not consider maintaining a distance of six feet from partially-guarded or unguarded energized equipment in grain storage structures as an 'otherwise equally effective means or method' provided by the standard." See September 29, 2008 Letter of Interpretation.

26. OSHA's Standard at 29 CFR 1910.23(a)(5) provides that "[e]very pit and trapdoor floor opening, infrequently used, shall be guarded by a floor opening cover of standard strength."

27. OSHA's Standard at 29 CFR 1928.57(c)(3)(i) also provides that sweep augers and other augers, "which must be exposed for proper function, shall be guarded to the fullest extent which will not substantially interfere with the normal functioning of the component."

28. In May of 2013, OSHA issued a Grain Handling Facility Sweep Auger Enforcement Policy (the "Sweep Auger Policy"). Among other things, the Sweep Auger Policy requires that:

\* \* \*

4

3. Before operation of the sweep auger, the grate/guard on the subfloor auger must be in place and secured.

* * *

5. All sweep augers (including portable sweep augers) must be provided with guards that protect against contact with moving parts at both the top and back areas. The only unguarded portion of the sweep auger should be the front point of operation.

6. An observer, in accordance with §1910.272(g), must always be positioned outside the storage bin monitoring the activities of workers inside the bin.

7. If a worker enters the bin while the sweep auger is energized, the employer must utilize engineering controls within the grain bin to prevent the worker from coming into contact with the energized sweep auger. Acceptable engineering controls may include:

    a. A sweep auger equipped with an attached guard that prevents the worker's contact with the unguarded portion of the auger, in accordance with 29 CFR 1910 Subpart O, Machinery and Machine Guarding.

    b. A sweep auger equipped with a control mechanism, such as a dead-man switch or other similar device, which will allow for the sweep auger's operation only when the operator is in contact with the device.[2] If this method is utilized as a means of worker protection, the worker must be positioned at least seven feet from the energized auger at all times.

    c. Any workers other than the operator of the sweep auger present in the storage bin while the sweep auger is energized must also be protected in a manner that keeps them out of the zone of danger. For example, this may include the installation of guardrails or catwalks that prevent workers from entering the area within the path of the auger.

* * *

16. These OSHA regulations, policies, and interpretations apply to and are binding upon Defendants.

5

Case 3:22-cv-00413-FDW-DCK   Document 1   Filed 08/17/22   Page 5 of 13

## *The Day of the Incident*

17. On November 9, 2020, Rusty contacted Robbie and asked him to come to Cox Brothers farm to help clean out one of the large grain bins.

18. As Robbie normally performed electrical work, he only rarely went inside the bins. Prior to November 2020, Robbie had not helped clean out a grain bin in a number of years.

19. At all times, the grain bin and the farm were owned and operated by Defendants. Robbie had been inside it only once before November 9, 2020.

20. A sweep auger and motor were installed at the bottom of the grain bin underneath the floor to assist in moving grain from the periphery of the bin to the center where it would then be discharged from the bin. Drain sumps in the floor of the grain bin allowed the grain to flow down to where the auger was located.

21. As manufactured, the drain sumps of the grain bin have guards over the top of them, consisting of three evenly spaced metal bars that span the entire length of the drain sump opening, in order to prevent workers from coming into contact with the subfloor sweep auger.

22. However, and unbeknownst to Robbie, the guard on one of the drain sumps of this grain bin had been deliberately cut off and removed. Specifically, the middle of the three metal bars crossing the opening of the drain sump had been cut out and not replaced, creating a large opening in the middle of the drain sump with no physical barrier or protection from a larger object going through that opening. Upon information and belief, the guard had been removed in order to speed up the rate at which grain could flow down to the subfloor sweep auger and out of the grain bin.

23. Upon further information and belief, the guard over the drain sump had been removed by – or at the explicit instruction of – Rusty.

24. Neither Rusty nor any other employee or owner of Cox Brothers informed Robbie that any portion of the guard on any drain sump had been removed.

25. The design of the drain sumps was such that Robbie was not able to see that the middle guard bar had been removed while he was working. In addition, the inside of the bin was very dark and dusty, further limiting visibility.

26. While working in the grain bin as directed by Rusty, Robbie unwittingly stepped on top of the one drain sump with the partially removed guard. His right leg went into the open drain sump and was pulled in further by the auger.

27. Robbie immediately experienced excruciating pain as his leg was mangled by the auger, and continued to be trapped, with the auger crushing his bones and flesh.

28. Other employees had to reverse the auger's rotation in order to free Robbie and pull his leg out of the drain sump.

29. As a result of his injuries, Robbie ultimately lost his right leg below the knee.

30. As a result of his injuries and the loss of his limb, Robbie is now permanently materially disabled and unable to work, much less perform the same farm and electrical work he had done prior to the incident. Robbie has suffered and continues to endure physical and emotional pain and suffering as a result of his injuries.

31. Plaintiffs' injuries and damages are the direct and proximate result of Cox Brothers' negligence, gross negligence, recklessness, and intentional disregard for Robbie's rights and safety. Plaintiffs are therefore entitled to recover from Cox Brothers damages in an amount believed to exceed $25,000.

### *Cox Brother's Knowing Failures*

32. Cox Brothers failed to provide a safe workplace in which Robbie, and other employees, could work without fear of harm and injury, thereby creating dangerous working conditions for Robbie and other employees.

33. Upon information and belief, other employees of Cox Brothers have suffered workplace injuries at the Cox Brothers farm in the past due to Cox Brothers' lax safety practices and procedures, but Cox Brothers has not undertaken any changes to ensure their employees' safety or to prevent accidents and injuries.

34. Further, Cox Brothers has continuously and repeatedly failed and refused to obtain the required worker's compensation insurance, despite prior workplace injuries sustained by their employees.

35. Cox Brothers acted recklessly, wantonly, and with reckless disregard of the rights and safety of Robbie, and intentionally engaged in conduct with the knowledge that such conduct was substantially certain to cause serious injury or death to Robbie in the following particulars:

   a. Cox Brothers knew that the drain sump in the floor of the grain bin originally had a guard installed consisting of three metal bars that spanned the opening of the drain sump. Nonetheless, Cox Brothers deliberately cut out and removed the middle bar of that guard from one of the drain sumps;

   b. Cox Brothers knew that it had removed a portion of the preexisting guard over the drain sump but failed to inform Robbie of that fact;

   c. Cox Brothers required Robbie to work in the grain bin while knowing that a portion of the guard over the drain sump had been deliberately removed;

   d. Cox Brothers knew the necessity of having adequate and proper guards over drain sumps and in connection with sweep augers pursuant to OSHA regulations and policies;

e. Cox Brothers knew the life-threatening dangers posed by a sweep auger should a person come into contact with the sweep auger when energized;

f. Cox Brothers knew that its workers were not properly trained on the steps needed to comply with OSHA regulations and maintain safety while working inside a grain bin with an energized auger;.

g. Cox Brothers knew that it instructed Robbie to enter into a grain bin with an energized sweep auger and an unprotected, uncovered drain sump;

h. Cox Brothers knew that it was possible for a person's extremities or clothing to become caught in an energized auger in the absence of a proper guard to prevent such contact;

i. Cox Brothers knew that Robbie would suffer serious injury or death if and when he was caught in the sweep auger;

j. Cox Brothers knew that the area in which Robbie was working was poorly lit and dusty, such that it would be difficult to see the absence of any portion of the guard that was supposed to protect the drain sump opening;

k. Cox Brothers knew that the subfloor sweep auger was energized at the same time that Robbie was assisting with cleaning out the grain inside the grain bin;

l. Cox Brothers knew that safety standards required that the drain sump be adequately covered while the sweep auger was energized and in operation;

m. In sum, Cox Brothers placed Robbie into an unfamiliar grain bin while the subfloor sweep auger was energized without telling him that the guard had been removed from a drain sump. Of course, Robbie did not know that Cox Brothers had removed the guard from the drain sump, and was simply performing the task he was assigned by Rusty.

36. Cox Brothers created a situation whereupon its employees, acting exactly as they had been instructed and trained, faced serious injury or certain death.

37. Further, Cox Brothers were required to maintain worker's compensation for its employees, as it employs more than three people, and at least ten full-time, non-seasonal farm laborers.

38. Cox Brothers knew that it was likely, if not guaranteed, that its employees may suffer injuries while working, as they were aware of at least two prior workplace injuries suffered by other employees before November 9, 2020.

8

Case 3:22-cv-00413-FDW-DCK   Document 1   Filed 08/17/22   Page 8 of 13

39. Despite knowing its obligations under North Carolina law, Cox Brothers failed and refused to maintain worker's compensation insurance for the benefit of Robbie and its other employees. Following the incident which cost him his leg, Rusty told Robbie in no uncertain terms that Cox Brothers did not have any worker's compensation insurance.

40. As a result of the failure to obtain the required worker's compensation insurance and deliberately reckless conduct that Cox Brothers knew was substantially certain to result in serious bodily injury or death, Plaintiffs are permitted to bring this action and are not subject to the exclusivity provisions of the North Carolina Worker's Compensation Act.

## FIRST CAUSE OF ACTION
### [Negligence / Gross Negligence– All Defendants]

41. The preceding paragraphs are realleged and reincorporated herein as if fully set forth.

42. Defendants systematically breached their legal duties to Robbie and were negligent at the times and places as described above in great detail, and distilled to at least the following particulars:

   a. Defendants failed to maintain an appropriate guard covering the drain sumps of the grain bin;

   b. Defendants intentionally and deliberately cut out and removed a portion of the guard protecting one drain sump in the grain bin floor, rendering the drain sump dangerous and all but guaranteeing that someone would step or fall into the opening;

   c. Defendants required and encouraged Robbie to perform work inside the grain bin while the subfloor sweep auger was energized and the drain sump did not have a proper guard;

   d. Defendants failed to conduct appropriate safety training for any of its employees tasked with working inside grain bins, including Robbie;

   e. Defendants failed to implement and follow adequate safety policies in compliance with OSHA regulations;

   f. Defendants failed to implement adequate safety precautions and measures to ensure Robbie's safety.

43. The negligent acts and omissions of Defendants and those under their control and supervision, as described hereinabove, were direct and proximate causes of Plaintiff's injuries.

44. The acts and omissions of Defendants and those under their control and supervision, were willful, wanton, and reckless, and amount to gross negligence.

45. Defendants' actions and omissions amounted to a conscious and intentional disregard and indifference to the rights and safety of Robbie.

46. In light of Cox Brothers Farm's failure to maintain worker's compensation insurance as required by North Carolina law, the exclusivity provisions of the North Carolina Workers Compensation Act do not apply to this action.

47. Further, due to the intentional and egregious conduct exhibited by Defendants Cox Brothers Farm and Rusty which rendered it substantially certain that Robbie would suffer grievous injury (if not death) the exclusivity provisions of the North Carolina Workers Compensation Act do not apply to this action.

48. As a direct and proximate result of Defendants negligence and gross negligence, described more fully above, Plaintiffs are entitled to recover from Defendants, jointly and severally, in an amount to be determined at trial but which is believed to exceed $25,000.

## SECOND CAUSE OF ACTION
**[Premises Liability – Defendants Owner and Owner Management]**

49. The preceding paragraphs are realleged and reincorporated herein as if fully set forth.

50. Owner owns the real property and farm where the grain bin is located and where Robbie sustained his injuries.

51. Upon information and belief, Owner Management manages the real property owned by Owner.

52. Robbie was a lawful visitor and employee working at the farm during the time he sustained his injuries.

53. Defendants Owner and Owner Management owed a legal duty to Robbie to maintain the premises of the farm in a reasonably safe condition and protect Robbie from the foreseeable injuries he sustained while working in the grain bin.

54. Defendants Owner and Owner Management knew or should have known that the guard on a drain sump in the grain bin had been removed and presented a danger to Robbie and other employee.

55. Defendants Owner and Owner Management breached their legal duties in that they:

10

Case 3:22-cv-00413-FDW-DCK   Document 1   Filed 08/17/22   Page 10 of 13

a. Failed to use reasonable care in the maintenance of the premises for the protection of their visitors, including Robbie, for instance, in failing to ensure that all drain sumps inside grain bins were equipped with an adequate guard – a guard which they knew or should have known had been removed from the drain sump at issue;

b. Failed to ensure that proper safety precautions and preventative measures were in place to prevent an injury to a lawful visitor such as Robbie, such as failing to reasonably monitor and check whether all drain sumps were equipped with an adequate guard;

c. Failed to have an appropriate system in place to warn Robbie or other employees of the possibility that the guard of a drain sump within a grain bin may have been removed;

d. Failed to prevent or instruct employees not to enter a grain bin where the guard on a drain sump had been removed;

e. Failed to ensure that Cox Brothers Farm was complying with OSHA regulations and required safety practices on the farm and the real property owned by Owner; and

f. Were negligent in such other ways to be proven through discovery and trial.

56. Rusty's actions described herein are imputed to Farm under the doctrine of *respondeat superior* because at all pertinent times, Rusty was acting in the course and scope of his employment with Farm.

57. As a direct and proximate result of Defendants Owner and Owner Management's breaches of their duties to Robbie, described more fully above, Plaintiffs are entitled to recover from Defendants Owner and Owner Management, jointly and severally, in an amount to be determined at trial but which is believed to exceed $25,000.

### THIRD CAUSE OF ACTION
### [Loss of Consortium – All Defendants]

58. The preceding paragraphs are realleged and reincorporated herein as if fully set forth.

59. At the time of the negligence complained of in the Plaintiffs' Complaint, Debbie was the lawful wife of Robbie and they continue to be married.

60. As a result of the wrongful and negligent acts of the Defendants, the Plaintiffs were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their marital relationship.

11

61. That all the aforesaid injuries and damages were caused solely and proximately by the negligence of the Defendants.

62. As a direct and proximate result of Defendants' negligence, described more fully above, Plaintiffs are entitled to recover from Defendants, jointly and severally, on their claim for loss of consortium in an amount to be determined at trial but which is believed to exceed $25,000.

## FOURTH CAUSE OF ACTION
### [Punitive Damages – All Defendants]

63. The preceding paragraphs are realleged and incorporated as if fully set forth herein.

64. Defendants' actions as alleged hereinabove constitute intentional, willful and wanton conduct, as set forth in N.C.G.S. § 1D.

65. Pursuant to N.C.G.S. § 1D, Plaintiffs are entitled to recover punitive damages from Defendants, jointly and severally, in an amount to be determined by a jury, for not less than $25,000.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray the Court to:

1. Enter judgment against Defendants, jointly and severally, for their negligence, gross negligence, premises liability, loss of consortium, and for punitive damages under N.C.G.S. § 1D-1, *et. seq.*;

2. That Plaintiffs be granted a jury trial on all issues herein triable by a jury;

3. That the costs of this action be taxed against Defendants; and

4. For all other and further relief that the Court deems proper.

This the _____ day of August, 2022.

                                                **JAMES, McELROY & DIEHL, P.A.**

                                                /s/ J. Alexander Heroy
                                                J. Alexander Heroy
                                                Jennifer M. Houti
                                                525 N. Tryon Street, Suite 700
                                                Charlotte, NC  28202
                                                Telephone: (704) 372-9870
                                                E-mail: aheroy@jmdlaw.com,
                                                jhouti@jmdlaw.com,
                                                *Attorneys for Plaintiffs*