UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:22-CV-00413-FDW-DCK

| | |
|---|---|
| ROBBIE G. PLYLER and DEBORAH PLYLER, <br><br> Plaintiffs, <br><br> v. <br><br> COX BROTHERS, INC. d/b/a COX BROTHERS FARM; COX FARM MANAGEMENT, LLC d/b/a COX BROTHERS FARM; CAMPBELL COX, RUSSELL F. COX, MARION F. COX, and DELANO S. COX, <br><br> Defendants. | **ORDER** |

**THIS MATTER** is before the Court on Defendant's Motion for Judgment as a Matter of Law, or in the Alternative, Motion for a New Trial, (Doc. No. 55), and Plaintiffs' Motion to Alter the Judgment, (Doc. No. 56). These matters have been fully briefed, (Doc. Nos. 55, 56, 57, 63, 64, 65, 68), and are ripe for ruling. For the reasons set forth below, Defendants' Motions are DENIED. Plaintiffs' Motion is GRANTED IN PART and DENIED IN PART.

**I. BACKGROUND**

In the interest of judicial economy, the Court declines to provide a thorough recitation of the testimony, evidence, and arguments presented at the five-day trial before a jury in this matter. In sum, the causes of action arose from an injury Mr. Plyler suffered during his employment for Defendants. Specifically, the Complaint alleged four causes of action: (1) Negligence/Gross Negligence against all Defendants; (2) Premises Liability against Defendants Owner and Owner Management; (3) Loss of Consortium against all Defendants by Mrs. Plyler; and (4) Punitive

1

Damages against all Defendants. (Doc. No. 1). Prior to trial, through a Joint Stipulation of Dismissal without Prejudice, Defendant Cox Brothers, Inc. was dismissed from the suit. (Doc. No. 45.) Additionally, summary judgment was granted to Cox Land Investments, Limited Partnership and Cox Land Company, LLC for all causes against them. (Doc. No. 28, p. 6–7.)

At the close of evidence, Defendants made an oral motion for judgment as a matter of law on all claims. The Court denied Defendants' motion and submitted all clams to the jury. After several hours of deliberation, the jury returned a verdict in favor of Mr. Plyler on the Negligence claim and in favor of Mrs. Plyler on the Loss of Consortium claim finding: (1) Plaintiff Mr. Plyler was injured by the negligence of the Defendants; (2) Plaintiff Mr. Plyler, by his own negligence, contributed to his injury; (3) Defendants had the last clear chance to avoid Plaintiff Mr. Plyler's injury; (4) Plaintiff Mr. Plyler was entitled to $2,000,000 in compensatory damages; and (5) Plaintiff Mrs. Plyler was entitled to $500,000 in compensatory damages for loss of consortium. (Doc. No. 50, p. 1–4.) The jury did not find Defendants liable for punitive damages. (Doc. No. 50, p. 4.)

The Clerk entered judgment consistent with the jury's verdict on December 7, 2023, (Doc. No. 54), and the parties timely filed the instant post-trial motions. Discussion of other background information and evidence is set forth more fully as needed to explain the Court's decision as to each motion below.

## II. STANDARD OF REVIEW

### A. Renewed Motion for Judgment as a Matter of Law

"If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," a court may grant a motion for judgment as a matter of law against the party. Fed. R. Civ.

2

Case 3:22-cv-00413-FDW-DCK   Document 69   Filed 04/10/24   Page 2 of 15

P. 50(a). Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, a party may renew a judgment as a matter of law motion made but denied during trial, and if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," the court may affirm the jury's verdict, order a new trial, or enter judgment as a matter of law. Fed. R. Civ. P. 50(b).

However, the Fourth Circuit has consistently held a court may not "weigh the evidence, pass the credibility of witnesses, or substitute our judgment of the facts for that of the jury." Lust v. Clark Equip. Co., 792 F.2d 436, 437–38 (4th Cir. 1986) (quoting Tights, Inc. v. Acme-McCrary Corp., 541 F.2d 1047, 1055–56 (4th Cir. 1976)). Still, "conjecture and speculation from the nonmovant are insufficient to overcome a motion for judgment as a matter of law." United States SEC v. Clark, 60 F.4th 807, 813 (4th Cir. 2023) (citing Moskos v. Hardee, 24 F.4th 289, 299 (4th Cir. 2022)). "When a jury verdict has been returned, judgment as a matter of law may be granted only if, viewing the evidence in a light most favorable to the non-moving party (and in support of the jury's verdict) and drawing every legitimate inference in that party's favor, the only conclusion a reasonable jury could have reached is one in favor of the moving party." Int'l Ground Transp., Inc. v. Mayor of Ocean City, 475 F.3d 214, 218–219 (4th Cir. 2007).

**B. Motion for a New Trial**

Pursuant to Rule 59 of the Federal Rules of Civil Procedure, the Court may "grant a new trial on all or some of the issues." Fed. R. Civ. P. 59(a)(1). A partial new trial is permissible if the "issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 711 F.3d 1348, 1381 (Fed. Cir. 2013) (quoting Gasoline Prods. Co. v. Champlin Ref. Co., 283 U.S. 494 (1931)). The decision to grant or deny a motion for new trial ultimately "rests with the sound

discretion of the district court" and is reviewed for a "clear abuse of discretion." Bristol Steel & Iron Works v. Bethlehem Steel Corp., 41 F.3d 182, 186 (4th Cir. 1994) (citations omitted).

In considering a motion for a new trial, the Court "should grant a new trial only if '1) the verdict is against the clear weight of the evidence, 2) is based on evidence which is false, or 3) will result in a miscarriage of justice.'" Bryant v. Aiken Regional Med. Ctrs. Inc., 333 F.3d 536, 543 (4th Cir. 2003) (quoting Dennis v. Columbia Colleton Med. Ctr., 290 F.3d 639, 644–45 (4th Cir. 2002)). Unlike a motion for judgment as a matter of law, the district court may weigh evidence, assess credibility, and exercise its discretion in ruling on a motion for a new trial. See Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998); Bristol Steel & Iron Works v. Bethlehem Steel Corp., 41 F.3d 182, 186 (4th Cir. 1994).

A new trial is warranted "when a jury has reached a seriously erroneous result as evidenced by . . . the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." Mike's Train House, Inc. v. Lionel, LLC, 472 F.3d 398, 405 (6th Cir. 2006) (quotation omitted). "However, where 'such prejudice is cured by instructions of the court, the motion for a new trial should be denied.'" E.E.O.C. v. McGee Bros. Co., Inc., No. 3:10-cv-142, 2011 WL 2119140 at *3 (W.D.N.C. May 26, 2011) (quoting Clarksville–Montgomery Cnty. School Sys. v. United States Gypsum Co., 925 F.2d 993, 1002 (6th Cir.1991)). "Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order." Fed. R. Civ. P. 61.

**C. Motion to Amend the Judgment and Motion for Costs**

Rule 59(e) is intended to allow a district court "to correct its own errors [to] 'spar[e] the parties and the appellate courts the burden of unnecessary appellate proceedings.'" Pac. Ins. Co.

4

v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (quoting Russel v. Delco Remy Dev. of Gen. Motors Corp., 51 F.3d 746, 749 (7th Cir. 1995)). Thus, a court may grant a motion under Rule 59(e) to alter or amend a judgment if it finds "that there has been an intervening change of controlling law, that new evidence has become available, or that there is a need to correct a clear error or prevent manifest injustice." Robinson v. Wix Filtration Corp. LLC, 599 F.3d 403, 411 (4th Cir. 2010). A Rule 59(e) motion seeking to "raise arguments which could have been raised prior to the issuance of the judgment" is not proper. Pac. Ins. Co., 148 F.3d at 403.

### III. ANALYSIS

**A. Renewed Motion for Judgment as a Matter of Law**

For Mr. Plyler to establish Defendants' negligence, he had to prove by a preponderance of the evidence "(1) that defendant failed to exercise proper care in the performance of a duty owed plaintiff; (2) the negligent breach of that duty was a proximate cause of plaintiff's injury; and (3) a person of ordinary prudence should have foreseen that plaintiff's injury was probable under the circumstances." Burnham v. S&L Sawmill, Inc., 749 S.E.2d 75, 7980 (N.C. Ct. App. 2013) (quoting Von Viczay v. Thomas, 538 S.E.2d 629, 630–31 (N.C. Ct. App. 2000), aff'd, 545 S.E.2d 210 (2001) (per curiam) (citations omitted)). To overcome a finding of contributory negligence, Mr. Plyler also had to prove by a preponderance of the evidence (1) "plaintiff negligently placed himself in a position of helpless peril;" (2) "defendant knew or, by the exercise of reasonable care, should have discovered the plaintiff's perilous position and his incapacity to escape from it;" (3) "defendant had the time and ability to avoid the injury by the exercise of reasonable care;" (4) "defendant negligently failed to use available time and means to avoid injury to the plaintiff;" and (5) "as a result, the plaintiff was injured." Outlaw v. Johnson, 190 N.C. App. 233, 238 (2008).

Applying these standards here, the Court concludes the evidence was sufficient for the jury to find Mr. Plyler was injured by the negligence of Defendants and Defendants had the last clear chance to avoid Mr. Plyler's injury. Both parties presented evidence regarding Defendants' acts and omissions, as well as evidence as to whether Defendants' acts and omissions proximately caused Mr. Plyler's injury. Additionally, both parties offered evidence as to who was in or near the grain bin at the time of injury, their knowledge of the cut-out bar of the sump grate, and their level of responsibility in the Cox Brothers Farm hierarchy. While a reasonable trier of fact could draw from the evidence and find in favor of either Plaintiffs or Defendants on the liability issues, when construing the evidence in the light most favorable to Plaintiffs, substantial evidence exists for the jury to find that Defendants failed to exercise reasonable care, caused Plaintiffs' injuries, and had an opportunity to avoid Mr. Plyler's injury.[1]

Defendants specifically argue no reasonable jury could have found Mr. Plyler *not* contributorily negligent. (Doc. No. 55-1, p. 4–6.) The jury found, based on the greater weight of the evidence, Mr. Plyler was contributorily negligent in injuring himself. Because the jury found in favor of Defendants on this issue, the Court denies Defendants' argument as moot. Furthermore, as previously stated, the jury found no basis for an award of punitive damages. Yet, Defendants seek entry of judgment as a matter of law by this Court on the punitive damages claim. (Doc. No. 55-1, p. 15.) The Court also denies this argument as moot. Accordingly, the Court denies Defendants' renewed motion for judgment as a matter of law.

**B. Motion for a New Trial**

---

[1] While Defendants bring attention to a note provided to the Court by the jury during deliberations, the Court does not construe the note as demonstrating a misunderstanding of the law as Defendants contend. Rather, the Court reads the note as asking for a factual determination outside of the role of the Court. The note makes clear the jury was thinking thoughtfully through the issues before they made their ultimate decision.

6

Defendants request an award of a new trial on several grounds. Defendants seek a new trial on either all claims except punitive damages; last clear chance, gross negligence, and gross contributory negligence only; or last clear chance only. As an initial matter, the Court will not grant a new trial on fewer than all the issues because the Court does not find they are "distinct and separable from the others" in a way in which a new trial on some but not all the issues would prevent an injustice. See Atlas Food Sys. & Servs. V. Crane Nat'l Vendors, 99 F.3d 587, 599 (4th Cir. 1996).

*1. Clear Weight of the Evidence*

Defendants argue the Court erred in submitting the issue of Last Clear Chance to the jury because "there was no evidence introduced at trial from which the jury could find all of the required elements." (Doc. No. 55-1, p. 16.) After a review of the transcripts and evidence presented at trial, the Court incorporates its analysis under Defendants' Renewed Motion for Judgment as a Matter of Law herein. The Court cannot find the verdict on the issue of last clear chance was against the clear weight of evidence. The Court has already found that substantial evidence supports the jury's finding. The Court observed the jurors listening attentively to the presentation of testimony, other evidence, and argument, and the jury's verdict reflects that it paid careful attention to the details of the evidence presented at the trial. The jury made credibility determinations that do not appear inconsistent. Defendant has failed to satisfy its burden to show the verdict is against the clear weight of the evidence. Accordingly, a new trial is not warranted on this issue.

*2. Prejudicial Errors*

Defendants also argue the Court committed a number of evidentiary and procedural errors that were so prejudicial as to entitle them to a new trial. As explained below, Defendants' arguments are without merit.

7

a. Jury Instructions

"District courts are necessarily vested with a great deal of discretion in constructing the specific form and content of jury instructions." Hardin v. Ski Venture, Inc., 50 F.3d 1291, 1293 (4th Cir. 1995) (citing Price v. Glosson Motor Lines, Inc., 509 F.2d 1033, 1036 (4th Cir. 1975)). Specific jury instructions "may not be judged in artificial isolation, but must be viewed in the context of the overall charge[,]" Noel v. Artson, 641 F.3d 580, 586 (4th Cir. 2011) (quoting Henderson v. Kibbe, 431 U.S. 145, 153 n. 10, 97 S. Ct. 1730 (1977)), for "the charge in its totality was what the jury heard[,]" id. at 586. "Instructions will be considered adequate if construed as a whole, and in light of the whole record, they adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the [objecting] party." Gentry v. E. W. Partners Club Mgmt. Co. Inc., 816 F.3d 228, 233 (4th Cir. 2016) (quoting Bunn v. Oldendorff Carriers GmbH & Co. KG, 723 F.3d 454, 468 (4th Cir. 2013)).

Defendants have presented two instructions on which the Court allegedly erred in charging the jury. Specifically, Defendants contend the Court erred in charging the jury on last clear chance and gross negligence. (Doc. No. 55-1, p. 19.) Defendants' arguments, identical to those at trial, are insufficient to show error. In its brief, Defendants have not provided any basis for the Court to conclude its instructions misled or confused the jury in such a way to prejudice Defendants.[2] As the Court has previously explained, there was sufficient evidence to allow the jury to assess the evidence and determine the issues of last clear chance and gross negligence. Regardless, the jury *did not* make a finding of gross negligence and *did not* award punitive damages making this Court's

---

[2] Defendants offer to the Court Redd v. Wilcohess, L.L.C., 225 N.C. App. 7226 (2013) as a "factually-analogous situation" in which the North Carolina Court of Appeals held the trial court properly denied a request for a jury instruction on the issue of last clear chance. (Doc. No. 55-1, p. 7–8.) However, Redd is factually distinguishable because the plaintiff had knowledge of the wet floor sign and the defendant was "in the back of the store . . . with his back turned to plaintiff". Redd, 225 N.C. App. at 730–31. Here, testimony was presented that Mr. Plyler did not have knowledge of the cut-out bar of the sump grate and Cramer Phillips, a shop manager for Cox Brothers Farm, was in the grain bin with Mr. Plyler.

8

potential error harmless. Taylor v. Va. Union Univ., 193 F.3d 219, 235 (4th Cir. 1999) (explaining an error is harmless and does not require a new trial if the court can "say 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the errors'" (citations omitted)).

    b. Motion to Bifurcate Trial

  Defendants contend the Court "substantially erred in denying Defendants' pre-trial motion to bifurcate the trial into liability and damages phases, resulting in the introduction of highly-prejudicial evidence as to the Defendants' assets, revenues, and net worth." (Doc. No. 55-1, p. 19.) The issue of whether to bifurcate trial is determined under Rule 42(b) of the Federal Rules of Civil Procedure as a matter within the Court's broad discretion. See Fed. R. Civ. P. 42(b); Central Transport Intern., Inc. v. General Elec. Co., 2008 WL 4457707, at *2–3 (W.D.N.C. Sept. 30, 2008) ("[W]hether to order bifurcation of claims/issues… rests squarely within the broad discretion of the District Court… Moreover, bifurcation of discovery is the exception, rather than the rule…" (citing Maher v. Continental Cas. Co. 76 F.3d 535, 545 (4th Cir. 1996); In re Hutchinson, 5 F.3d 750, 758 (4th Cir. 1993))).

  As this Court stated in its prior Order denying Defendants' Motion to Bifurcate, "the Court finds bifurcation of trial in this matter inappropriate, particularly considering the Court's ability to eradicate any potential for unfair prejudice through limiting instructions to the jury during the presentation of evidence." (Doc. No. 30, p. 1.) While Defendants are correct in that evidence at trial was elicited regarding Defendants' assets, revenues, and net worth, the Court instructed the jury with a clear limiting instruction as to the purpose of the evidence. Specifically, the jury was instructed to only consider evidence of assets, revenue, and net worth as it related to punitive damages under North Carolina General Statute § 1D-35.

Substantial evidence of willful and wanton conduct related to cutting out the bar of the sump grate and the overall operation of the grain bin was presented at trial to support a finding of gross negligence and an award of punitive damages. Willful or wonton conduct is defined as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C. Gen. Stat. § 1D-5(7). Among other things previously discussed, testimony was presented that Defendants had knowledge the grain bin handbook from the manufacturer of the grain bin instructed against removing the bars of the sump grate. Yet, Defendants removed the sump grate bar. The jury also heard testimony that OSHA regulations require exposed augers be properly guarded and Mr. Decker, an expert, opined the sliding steel door provided by Defendants was insufficient. From this testimony, a reasonable jury could conclude Defendants consciously and intentionally disregarded the safety of Mr. Plyler. However, the jury *did not* make a finding of gross negligence and *did not* award punitive damages. Therefore, any potential error is harmless.

c. Evidence Defendant Campbell Cox asked Mrs. Plyler not to Contact OSHA

Defendants also argue the Court "substantially erred in allowing testimony that Campbell Cox asked Mrs. Plyler not to contact OSHA after the accident." (Doc. No. 55-1, p. 20.) Specifically, Defendants assert this testimony was allowed "after substantially all of the evidence had been received without any evidence to support a finding of gross negligence, much less punitive damages." (Id.)

As the Court has previously stated, substantial of willful and wanton conduct related to cutting out the bar of the sump grate and the overall operation of the grain bin was presented at trial to support a finding of gross negligence and an award of punitive damages. The Court gave much consideration to the admission of testimony regarding a lack of OSHA investigation and

10

Case 3:22-cv-00413-FDW-DCK   Document 69   Filed 04/10/24   Page 10 of 15

Defendant Campbell Cox asking Mrs. Plyler to not contact OSHA. In fact, during trial, the Court asked each side to submit supplemental briefing on the issue and allowed for additional oral arguments prior to the Court entering its oral ruling. In an Order memorializing this Court's ruling, (Doc. No. 52), the Court concluded "evidence of Defendants' lack of an OSHA investigation and communications asking parties not to contact OSHA is not relevant for purposes of determining Defendants' liability . . . [but] is relevant for the limited purpose of determining the amount of punitive damages" pursuant to North Carolina General Statute § 1D-35. (Doc. No. 52, p. 2–3.) A jury instruction was provided in accordance with the Court's ruling. Accordingly, no error was made by the Court and even if there was error, any such error would be harmless because the jury *did not* make a finding of gross negligence and *did not* award punitive damages.

### d. OSHA Regulations

Defendants argue the Court "erred in allowing the admission of OSHA regulations that on their face were not applicable to Cox Brothers Farm." (Doc. No. 55-1, p. 21.) Defendants presented no expert testimony regarding which, if any, OSHA regulations were applicable in this matter. Instead, Defendants argued various regulations were inapplicable based on Defense Counsels' reading of the regulations. Comparatively, Plaintiffs presented expert testimony by Mr. Decker explaining which OSHA regulations, based on his extensive experience, applied to Cox Brothers Farm. In line with the holding in Albrecht v. Balt & O.R. Co., 808 F.2d 329, 332 (4th Cir. 1987), this Court did not exclude testimony or evidence of OSHA regulations and allowed them to be admitted for the purpose of providing evidence of the applicable standard of care. The Court also provided the jury with a limiting instruction that the OSHA regulations could be considered as evidence of the standard of care applicable to Defendants, but a violation of an OSHA regulation

11

does not constitute negligence in and of itself. Accordingly, the Court did not err in admitting the OSHA regulations.

### e. Mr. Jeff Decker's Testimony

Defendants argue the Court erred in numerous ways related to the expert testimony of Mr. Decker including: (1) "erred in allowing Jeff Decker to opine that the steel door cov[er]ing the sump would roll open when stepped on"; (2) "erred in allowing Jeff Decker to offer his opinion about the meaning of OSHA regulations"; and (3) "erred in allowing Jeff Decker to opine that Robbie Plyler's injuries were a direct result of Cox Brothers Farms' failure to comply with OSHA standards". (Doc. No. 55-1, p. 20–21.)

During the Pretrial Conference held in this matter, Plaintiffs agreed with Defendants that Mr. Decker would not be permitted to testify as to any causal effect Defendants' conduct had on Mr. Plyer's injuries. Prior to being exhibited to the jury, Plaintiffs redacted a reference to causation contained within Mr. Decker's expert report. Put simply, there was no testimony offered by Mr. Decker on the issue of causation and any arguments Defendants now make regarding Mr. Decker testifying to causation are moot. As for Mr. Decker's substantive testimony, Mr. Decker provided his opinion regarding the meaning of OSHA regulations in a manner that was accurate, not misleading, and proffered as to industry custom. Furthermore, Mr. Decker testified it was his opinion, based on his career designing grain bins and his time consulting in grain bin injury cases, the steel door covering the sump could roll open when stepped on. This is permissible testimony under Federal Rules of Civil Procedure Rule 702 and was not admitted in error.

### f. Exclusion of Exhibit 73

Defendants contend the Court "erred in excluding Exhibit 73, a video showing that the steel sump door would not roll open when stepped on, despite it being admissible and properly

12

authenticated." (Doc. No. 55-1, p. 21.) As this Court stated during trial, Rule 801(a) of the Federal Rules of Evidence identifies a statement as including "nonverbal conduct, if the person intended it as an assertion." See United States v. Jordan, 952 F.3d 160, 168–69 (4th Cir. 2020) (holding a man calling the defendant when instructed by an officer to call his drug supplier constitutes hearsay as "assertive conduct" "identifying [defendant] as his source as though he had said the words out loud"). Counsel for Defendants acknowledged Defendant Rusty Cox's nonverbal conduct in the video of him stepping on the steel sump door was asserting the steel door would not slide open when stepped on. Thus, the Court did not err in excluding Exhibit 73 as inadmissible hearsay. Furthermore, the Court permitted Defendant Rusty Cox to testify to the fact that he has stepped on the steel sump door without it opening allowing the jury to make a credibility determination between the testimony of Defendant Rusty Cox and Mr. Decker, and making any potential error harmless.

g. Mr. Williamson's Testimony

Defendants further contend the Court "substantially erred in allowing testimony from Jim Williamson regarding Mr. Plyler's future prosthetics needs, when Mr. Williamson was not properly disclosed as an expert witness." (Doc. No. 55-1, p. 21.) During trial, this Court ruled Mr. Williamson could provide lay testimony, based on his experience and training as a Certified Prosthetic and Orthotic Assistant, that did not rise to the level of specialized knowledge required of experts under Federal Rules of Evidence Rule 702.

As an initial matter, Plaintiffs disclosed Mr. Plyler's treating providers as potential witnesses and provided Mr. Williamson's service estimates for Mr. Plyler's present and future prosthetic needs in their initial disclosures. "Courts within the Fourth Circuit have held that 'a treating physician is not required to submit a Rule 26(a)(2)(B) report where he or she is expected

13

to testify to opinions formed during the course of treatment." Drennen v. United States, 375 Fed. App'x 299, 306 (4th Cir. 2010). Additionally, within the Fourth Circuit, treating physicians are "a hybrid witness" allowing "'fact opinions' of a treating physician's testimony [to] include not only his or her simplistic observations—such as a person's gait, the presence of swelling or that a body part is warm to the touch—but also notions regarding causation, diagnosis, prognosis, and the extent of the disability or injury." Dung Ngo v. Standard Tools & Equip., Co., 197 F.R.D. 262, 266–67 (D. Md. 2000) (citation omitted).

Importantly, Mr. Williamson testified to the present and future prosthetic needs of Mr. Plyler based on Mr. Williamson's examination and treatment of Mr. Plyler. In a case of this nature, there should be no surprise to Defendants that a provider treating Mr. Plyler for the prosthetic he needs as a result of the injury at the center of this case would be called to testify. See S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003) (finding inadequate disclosures harmless when defendant cannot be surprised by the existence of plaintiff's treating physician). Accordingly, the Court finds no error from which Defendants would be entitled to a new trial.

**C. Motion to Amend the Judgment and Motion for Costs**

*1. Prejudgment Interest*

Plaintiffs contend they are entitled to prejudgment interest of 8% pursuant to North Carolina General Statute § 24-5(b). Defendants do not contest this. Rather, Defendants assert Plaintiffs used the wrong judgment amount for calculating the interest noting the parties' pre-trial stipulation provided, "The parties agree that Defendants are entitled to a credit in the amount of $9,119.38 toward any damages that might be awarded to the Plaintiffs in this action, by reason of medical bills paid by the Cox Brothers Farms general partnership." (Doc. No. 6, p. 2.) Thus, after

giving effect to the stipulation, Defendants assert Plaintiffs' damages are reduced to $2,490,880.62 and prejudgment interest totals $260,416.45. The Court agrees with Defendants. Accordingly, the Court amends the judgment to reflect Plaintiff is entitled to 8% prejudgment interest on $2,490,880.62 from August 17, 2022, through December 7, 2023, in the total amount of $260,416.45.

*2. Post-judgment Interest*

Plaintiffs contend, pursuant to Fourth Circuit law and 28 U.S.C. § 1961, they are entitled to post-judgment interest. Defendants do not contest that post-judgment interest should be awarded. However, in accordance with the reduction of damages for the prejudgment interest calculation based on the parties' prior stipulation, Defendants characterize the judgment as awarding $2,490,880.62. Therefore, the post-judgment interest rate of 1.228% shall apply to Plaintiffs reduced damages award, as set forth in this order, from December 7, 2023, until satisfied.

## IV. Conclusion

**IT IS THEREFORE ORDERED** that Defendants' Motion for Judgment as a Matter of Law and in the Alternative Motion for a New Trial, (Doc. No. 55), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Alter Judgment, (Doc. No. 56), is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

Signed: April 10, 2024

Frank D. Whitney
United States District Judge