**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 24-1445**

ROBBIE G. PLYLER; DEBORAH PLYLER,

Plaintiffs - Appellees,

v.

RUSSELL F. COX; DELANO S. COX; MARION F. COX; CAMPBELL COX;
COX BROTHERS FARMS, a North Carolina general partnership,

Defendants - Appellants.

and

COX BROTHERS, INC., d/b/a Cox Brothers Farm; COX FARM MANAGEMENT,
LLC, d/b/a Cox Brothers Farm; COX LAND INVESTMENTS, LIMITED
PARTNERSHIP; COX LAND COMPANY, LLC.,

Defendants.

**No. 24-1488**

ROBBIE G. PLYLER; DEBORAH PLYLER,

Plaintiffs - Appellants,

v.

RUSSELL F. COX; DELANO S. COX; MARION F. COX; CAMPBELL COX;
COX BROTHERS FARMS, a North Carolina general partnership; COX
BROTHERS, INC., d/b/a Cox Brothers Farm; COX FARM MANAGEMENT, LLC,
d/b/a Cox Brothers Farm; COX LAND INVESTMENTS, LIMITED
PARTNERSHIP; COX LAND COMPANY, LLC,

Defendants - Appellees.

_____

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Frank D. Whitney, Senior District Judge. (3:22-cv-00413-FDW-DCK)

_____

Argued: May 6, 2025                              Decided: July 29, 2025

_____

Before RICHARDSON and HEYTENS, Circuit Judges, and FLOYD, Senior Circuit Judge.

_____

Affirmed by published opinion. Senior Judge Floyd wrote the opinion in which Judge Richardson and Judge Heytens joined.

_____

**ARGUED:** Christopher P. Raab, CAUDLE & SPEARS, P.A., Charlotte, North Carolina, for Appellants/Cross-Appellees. John Alexander Heroy, JAMES, MCELROY & DIEHL, P.A., Charlotte, North Carolina, for Appellees/Cross-Appellants. **ON BRIEF:** L. Cameron Caudle, Jr., CAUDLE & SPEARS, P.A., Charlotte, North Carolina, for Appellants/Cross-Appellees. Preston O. Odom, III, Jennifer M. Houti, JAMES, MCELROY & DIEHL, P.A., Charlotte, North Carolina, for Appellees/Cross-Appellants.

_____

2

FLOYD, Senior Circuit Judge:

After a jury trial, Cox Brothers Farms was found liable for negligence resulting in injuries to longtime farm worker Robbie Plyler. Plyler's leg became trapped in a running grain auger inside a grain bin on the farm, and the resulting injuries required the amputation of his right leg below the knee. The jury found that both Cox and Plyler committed negligence in the run up to the incident. However, it found the farm liable because it, and not Plyler, had the last clear chance to avoid Plyler's injury. It therefore awarded damages to Plyler, including to his wife for loss of consortium.

Now, Cox appeals. It argues that the district court erred in denying its pre-trial motions for summary judgment and its renewed motion for judgment as a matter of law on Plyler's negligence and gross negligence claims against it. It also challenges the court's denial of its motion to bifurcate the trial into a liability phase and a damages phase, and the court's denial of its motion to exclude testimony from Plyler's farm safety expert. After reviewing the record and hearing oral argument, we affirm the jury's verdict.

I.

A.

Cox Brothers Farms operates in Union County, North Carolina, as a general partnership under North Carolina law. The farm grows wheat, corn, and soybeans and raises hogs. Marion and Delano Cox, who are named Defendant-Appellants in this matter, are husband and wife and the sole partners in Cox Brothers Farms. Their son and grandson, named Defendant-Appellants Russell and Campbell Cox, respectively, are employees and

3

managers of the farm. Plaintiff-Appellee Robbie Plyler worked for Cox from 1997 to 2017 as an independent contractor, then as an employee of the farm until he left that employment following his injury in 2020.

Plyler was injured while helping other Cox employees clean out a grain bin used to store grain after it had been harvested. The bin where the injury occurred is a cylindrical metal silo approximately 50 feet tall with a diameter of 36 feet, and it is referred to by the parties as "Grain Bin #2." *See* Opening Br. 5. A subfloor auger used to empty the bin runs beneath its floor. Grain falls through square openings in the floor called "sumps" and into the auger, which then conveys the grain outside of the bin. Grain Bin #2 has five sumps, each equipped with a sliding metal door to prevent grain or other objects from falling through the sump into the auger. When Grain Bin #2 was constructed, the metal doors were accompanied by three metal safety bars placed spanning the opening of the sump. However, at the time of Plyler's injury, the centermost bar had been removed to improve grain flow and reduce the potential for clogging. The sump hole openings are about 13 inches long and 13 inches wide, and the removal of the metal bar created an opening large enough to allow an object the size of a man's foot to pass through the middle of the sump.

On November 9, 2020, Russell Cox called Plyler and asked him to assist in cleaning out Grain Bin #2 so that a different crop could be stored inside it. Plyler went to Grain Bin #2. He testified that, before entering, he turned two handles on the outside of the bins to open the then-closed sump doors. Then, he entered the bin where four other workers were sweeping out the bin. He assisted them for a time, and then Plyler moved to leave the bin. He placed a shovel beside the door to exit Grain Bin #2, turned around, and stepped into

4

an open sump door.  The subfloor auger was powered on, so Plyler's leg was severely injured in the machinery.  With assistance from fellow farm workers, Plyler's leg was eventually freed from the auger.  His injuries required the amputation of his right leg below the knee.

## B.

Plyler and his wife brought this diversity action in the Western District of North Carolina in August 2022.[1]  The complaint named as defendants Cox Brothers Farms, Russell Cox, Marion Cox, Delano Cox, and Campbell Cox.  We refer to the defendants collectively as "Cox Brothers Farms" or simply "Cox" except where context requires.  Several other Cox-related entities were also named defendants but were later dismissed from the case and are not parties to this appeal.

Plyler's complaint alleged that Cox was liable for negligence resulting in his injury, gross negligence, premises liability, loss of consortium, and punitive damages.  In June 2023, Cox filed a motion for summary judgment on all claims.  The court denied that motion in August 2023.

---

[1] The parties do not dispute that Cox did not carry worker's compensation insurance at the time of Plyler's injury, so North Carolina law precluding recovery when both employer and employee fall within the state worker's compensation regime does not apply.  *See* N.C. Gen. Stat. § 97-10.1 ("If the employee and the employer are subject to and have complied with the provisions of this Article, then the rights and remedies herein granted . . . shall exclude all other rights and remedies of the employee, his dependents, next of kin, or representative as against the employer at common law or otherwise[.]").

5

Before trial, Cox made several motions relevant to this appeal. First, it moved to bifurcate the trial into a liability phase and a damages phase to prevent "undue prejudice" to Cox resulting from the presentation of evidence related to its assets and net worth, photos of Plyler's injury, and the injury's impact on Plyler's life, and to "advance judicial economy" by reducing the number of witnesses that must be called in the event no liability was found. J.A. 570. The court, noting it could provide limiting instructions to remove the potential of unfair prejudice, subsequently denied Cox's bifurcation motion.

The next relevant filing was Cox's motion to exclude portions of the testimony of Jeffrey Decker, Plyler's expert witness. Cox argued that Decker's report improperly provided a legal opinion regarding the existence of a duty of care owed to Plyler and whether that duty was breached. Cox also moved to exclude Decker's testimony regarding the content and meaning of Occupational Safety and Health Administration (OSHA) regulations and the sufficiency of the steel sump door on the basis of relevance and reliability. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) (expert testimony must rest on "a reliable foundation" and be "relevant to the task at hand"). The district court reserved its ruling on Cox's motion until trial. Before Decker took the stand, the court denied the motion. The court also explained that it would instruct the jurors that the OSHA regulations were to be treated only as evidence of prevailing grain storage safety practices and that the court, as opposed to Decker or any other witness, would decide the law which governed the dispute.

Finally, Cox moved to exclude testimony about the lack of an OSHA investigation following the accident as irrelevant and unfairly prejudicial under Federal Rules of

6

Evidence 401 and 403.  The district court granted the motion in part — it permitted Plyler's wife Deborah to testify about Cox's request that she not contact OSHA and the lack of an OSHA investigation, but it instructed the jury that this evidence could only be considered in determining the amount of punitive damages to award Plyler, if any.  In a similar vein, the court also instructed the jury that the financial evidence was not to be considered in determining whether to find Cox liable.

A jury trial in this matter was held between November 7 and November 16, 2023.  The jury heard from numerous witnesses including Plyler, other Cox farm employees, members of the Cox family, and Plyler's expert witness, Jeffrey Decker.  Cox moved for judgment as a matter of law on all claims.  *See* Fed. R. Civ. P. 50(a) (permitting entry of judgment if a party "has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis" to find for the nonmoving party).  Cox contended that Plyler had put forth insufficient evidence to show it had the last clear chance to avoid Plyler's injury or that it had been grossly negligent in causing the injury.  The court denied the Rule 50 motion and the case was submitted to the jury on the issues of negligence (under the doctrine of last clear chance), gross negligence, loss of consortium, and punitive damages.

On November 16, the jury returned a verdict finding Cox liable to Plyler for negligence.  The jury found that (1) Plyler was injured by Cox's negligence; (2) Plyler was contributorily negligent; and (3) Cox had the last clear chance to avoid Plyler's injury.  The jury awarded Plyler $2,000,000 in compensatory damages and $500,000 for loss of consortium to Plyler's wife, Deborah.  The jury did not find that Cox had committed gross

7

negligence or award punitive damages to Plyler.  Judgment was entered in accordance with the jury's verdict on December 7.  On December 14, Cox filed a renewed motion for judgment as a matter of law or, alternatively, for a new trial under Federal Rules of Civil Procedure 50(b) and 59, respectively.  The court denied Cox's motion in April 2024.

Cox timely appeals, challenging the district court's denial of its motions for summary judgment, judgment as a matter of law, and for a new trial.  Plyler has filed a protective cross-appeal, contending that the district court should allow the jury to hear evidence about Cox's OSHA reporting practices in assigning liability in the event a new trial is ordered.

## II.

Cox assails the jury's verdict on the basis that it was entitled to judgment as a matter of law and summary judgment on Plyler's negligence claims.  It also contends that the individual defendants (Delano, Marion, Russell, and Campbell Cox) were entitled to judgment on all claims because none were present at Grain Bin #2 and, as a matter of law, none of those parties would have had the "last clear chance" to warn Robbie Plyler of the sump hole danger.  We affirm the district court's rulings.

We review the denial of a Rule 50 motion de novo.  *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 240 (4th Cir. 2009).  "[J]udgment as a matter of law may be granted only if, viewing the evidence in a light most favorable to the non-moving party (and in support of the jury's verdict) and drawing every legitimate inference in that party's favor, the only conclusion a reasonable jury could have reached is one in favor of the

8

moving party." *Int'l Ground Transp. v. Mayor of Ocean City,* 475 F.3d 214, 218–19 (4th Cir. 2007).  The district court's ruling on summary judgment is also reviewed de novo, taking "all facts and reasonable inferences in the light most favorable to the nonmovant." *Wikimedia Found. v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 14 F.4th 276, 289 (4th Cir. 2021).

## A.

We will assess Cox's arguments regarding the four individual defendants' liability first.  Those individual defendants are Marion, Delano, Campbell, and Russell Cox, and none were present at the site of Grain Bin #2 on the day of Plyler's injury.  Cox argues they therefore cannot be held liable, because none of them would have had a last clear chance to prevent Plyler's injury.  For reasons we now explain, we affirm the denial of the Rule 50 motion with respect to the individual defendants.

The parties stipulate that Marion and Delano Cox, husband and wife, are the sole partners of Cox Brothers Farms, a North Carolina general partnership.  J.A. 2622.  Russell and Campbell are father and son, respectively, and are described as "managers of the farm" who "run its day-to-day operations."  Opening Br. 4.  The parties also stipulate that Russell and Campbell "made the ultimate decision to cut out the center bar over the sump drain closest to the door" — the sump in which Plyler would later be injured — in the grain bin.  J.A. 2624.  On appeal, Cox contends that none of these individual defendants could possibly have had the last clear chance to prevent Plyler's injury because they were not at Grain Bin #2 that day.  In Cox's view, this lack of physical proximity therefore compels a judgment in these individual defendants' favor as a matter of law.

9

Our review of the record, however, shows that Cox articulated this physical proximity argument for the first time, if only briefly, in its post-trial motion for judgment as a matter of law. A Rule 50(a) movant must "specify the judgment sought and the law and facts that entitle the movant to the judgment," Fed. R. Civ. P. 50(a), and the renewed motion must "reassert" those arguments in a Rule 50(b) motion. *See Price v. City of Charlotte*, 93 F.3d 1241, 1249 (4th Cir. 1996). Cox did not attempt to differentiate the individual and entity defendants in resolving jury instructions prior to their submission to the jury; nor did it do so in its oral Rule 50(a) motion, in which it argued only in general terms that the facts did not justify the submission of the last clear chance issue as to all defendants.

Only in its Rule 50(b) motion made after the jury returned its verdict did Cox raise a potential problem regarding the individual defendants' distance from Grain Bin #2 at the time of Plyler's injury. "To preserve an argument on appeal, the defendant must object on the same basis below as he contends is error on appeal." *United States v. Zayyad*, 741 F.3d 452, 459 (4th Cir. 2014). We therefore cannot say the district court erred in denying Cox's Rule 50(a) motion on a basis that was not presented to the court until after the jury returned its verdict. That does not mean we are stripped of the opportunity to review Cox's sufficiency of the evidence arguments more generally, as it plainly raised that issue with respect to all defendants (without differentiation based upon physical proximity) in its Rule

10

50(a) motion. *Cf. Zayyad*, 741 F.3d at 459. We address Cox's arguments about the sufficiency of evidence below in Parts II.B and II.C.[2]

B.

Cox's motions for summary judgment were made first in time below, so we will address its arguments respecting the district court's denial of those motions next. Before trial, Cox argued there was no evidentiary basis to support finding gross negligence or to award punitive damages and that it was therefore entitled to summary judgment on those issues. The district court disagreed and concluded that a genuine dispute as to material facts existed "as to the relationships between" the defendants and "also as to the parties' knowledge of, and responsibility for, the allegedly dangerous condition on the land." J.A. 561. Accordingly, it denied Cox's motion. Cox again raised its sufficiency-of-the-evidence argument in its motion for judgment on gross negligence and punitive damages, which the court denied, too. The jury neither found Cox grossly negligent nor awarded punitive damages to Plyler.

Cox challenges the summary judgment ruling on appeal, re-raising its arguments that the record was — and is — devoid of evidence that would support any finding of gross negligence or a punitive damages award. However, "[s]ome interlocutory district court-

---

[2] And even if this argument has been preserved, Marion and Delano would also be liable as general partners of Cox Brothers Farms. Under North Carolina law, like in many other jurisdictions, "all partners are jointly and severally liable for the acts and obligations of the partnership." N.C. Gen. Stat. § 59-45; *see also Johnson v. Gill*, 68 S.E.2d 788, 791 (N.C. 1952) (recognizing codification of principle).

11

rulings . . . are unreviewable after final judgment because they are overcome by later developments in the litigation." *Dupree v. Younger*, 598 U.S. 729, 734 (2023). And "one such ruling is the denial of summary judgment on sufficiency-of-the-evidence grounds." *Id.* (citing *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011)). But because the record developed at trial "supersedes" the record on summary judgment, "a district court's assessment of the facts based on the summary-judgment record becomes 'ancient history and [is] not subject to appeal.'" *Id.* (first quoting *Ortiz*, 862 U.S. at 184; then quoting *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 823–24 (7th Cir. 2016)); *see also Nazario v. Gutierrez*, 103 F.4th 213, 225 (4th Cir. 2024) (recognizing same).

However, as previewed, Cox has preserved a sufficiency-of-the-evidence argument by making its renewed motion for judgment under Rule 50(b). *Cf. Nazario*, 103 F.4th at 225 ("the party that seeks to preserve a factual challenge to a summary judgment order must make a post-trial motion under" Rule 50). We therefore focus our review of the gross negligence and punitive damages issues upon the district court's order denying Cox's Rule 50(b) motion and, given the development of a full trial record, affirm the denial of Cox's motion for summary judgment on all claims.

## C.

We now take up Cox's arguments with respect to the sufficiency of the evidence. After the jury returned a verdict finding Cox liable for negligence, Cox renewed its motion for judgment as a matter of law on the issue of last clear chance. *See* Fed. R. Civ. P. 50(b). It argued that the evidence did not support finding that it had the last clear chance to avoid

Plyler's injuries, and that it therefore could not be found liable for those injuries under Plyler's negligence theory.

Before assessing Cox's arguments on appeal, we explain the theory of recovery upon which the jury was instructed. The substantive law of North Carolina applies in this diversity action. *See Megaro v. McCollum*, 66 F.4th 151, 159 n.4 (4th Cir. 2023); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). In North Carolina, a plaintiff's contributory negligence typically serves as a bar to recovery. *Cullen v. Logan Devs., Inc.*, 904 S.E.2d 730, 734 (N.C. 2024). However, North Carolina also recognizes the doctrine of last clear chance, which "allows a contributorily negligent plaintiff to recover where the defendant's negligence in failing to avoid the accident introduces a new element into the case, which intervenes between the plaintiff's negligence and the injury and becomes the direct and proximate cause of the accident." *Creech v. Town of Cornelius*, 910 S.E.2d 675, 678 (N.C. App. 2024) (quoting *Outlaw v. Johnson*, 660 S.E.2d 550, 556 (N.C. App. 2008); *see also Cullen v. Logan Devs., Inc.*, 904 S.E.2d 730, 734 n.2 (N.C. 2024) (recognizing doctrine). More specifically, to succeed on a claim of last clear chance, a contributorily negligent plaintiff must demonstrate:

> (1) that the plaintiff negligently placed himself in a position of helpless peril; (2) that the defendant knew or, by the exercise of reasonable care, should have discovered the plaintiff's perilous position and his incapacity to escape from it; (3) that the defendant had the time and ability to avoid the injury by the exercise of reasonable care; (4) that the defendant negligently failed to use available time and means to avoid injury to the plaintiff and (5) as a result, the plaintiff was injured.

*Outlaw*, 660 S.E.2d at 556 (quoting *Parker v. Willis*, 606 S.E.2d 184, 186 (N.C. App. 2004)).

On appeal, however, Cox does not argue that the only conclusion a reasonable juror could have reached on this issue was finding it did not have the last clear chance to avoid Plyler's injury. Rather, Cox directs us to articulations of the doctrine of last clear chance found in the Second Restatement of Torts, the "Helpless Plaintiff" and "Inattentive Plaintiff" theories. *See* Restatement (Second) of Torts § 479–80 (A.L.I. 1965). And Cox in turn contends that (1) North Carolina has adopted the Restatement's articulation of the law and that (2) Plyler could not recover under the "Helpless Plaintiff" or "Inattentive Plaintiff" theories, and it was therefore entitled to judgment as a matter of law.

Our read of the case law does not suggest that North Carolina has wholesale adopted the Second Restatement's approach to contributorily negligent plaintiffs seeking recovery in the way Cox suggests. Cox cites to a decision of the North Carolina Court of Appeals, the State's intermediate appellate court, in which it recognized that the case law is "consistent with" the Restatement. *Kenan v. Bass*, 511 S.E.2d 6, 8 (N.C. App. 1999). But, when sitting in diversity, "a federal court must look first and foremost to the law of the state's highest court" when determining state law. *Stahle v. CTS Corp.*, 817 F.3d 96, 100 (4th Cir. 2016) (quoting *Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1002 (4th Cir. 1998)). If the state court has not directly addressed the issue, a federal court "must anticipate how it would rule." *Id.* (quoting *Liberty Univ., Inc. v. Citizens Ins. Co. of Am.*, 792 F.3d 520, 528 (4th Cir. 2015)).

But we need not try to anticipate a ruling of the North Carolina Supreme Court because Cox's arguments referencing the Restatement were not presented to the district

14

court.  Instead, it raises these articulations of the doctrine of last clear chance and contends that the court below failed to apply applicable law.

Cox simply never directed the district court's attention to its preferred reading of North Carolina's approach to the doctrine of last clear chance, and it therefore raises this argument for the first time on appeal.  Cox cited North Carolina law in support of its argument, and while it emphasized its position that the evidence presented to the jury did not support a finding of last clear chance, it did not put forth the "Helpless Plaintiff" and "Inattentive Plaintiff" theories for liability.  Cox puts forth these new arguments pertaining to the timing of Plyler's "peril" and the extent to which it had (or did not have) the opportunity to inform Plyler of the danger and act to prevent harm.  These articulations of the doctrine of last clear chance focus more closely on the timing of the peril, versus the more general instruction read to and decided upon by the jury: that "the defendant knew, or by the exercise of reasonable care should have discovered, the plaintiff's position of peril and inability to escape from it" and that "the defendant had the time and means to avoid injury to the plaintiff and failed to exercise reasonable care to do so."  J.A. 1750. But the notions of the "Helpless" or "Inattentive" Plaintiff theories were not presented to a court in this matter until the filing of this appeal.

"Absent exceptional circumstances, parties may not raise new arguments on appeal that were not first presented to the district court." *Mountain Valley Pipeline, LLC v. 8.37 Acres of Land by Terry*, 101 F.4th 350, 360 (4th Cir. 2024).  Cox has not put forth exceptional circumstances justifying our review.  We therefore decline to assess the evidence presented at trial against legal theories not presented below, for "we are a court

15

of review, not of first view." *Grimmett v. Freeman*, 59 F.4th 689, 696 (4th Cir. 2023) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005)).

Cox does not put forth arguments contending that the evidence does not support the jury's verdict on negligence under the doctrine of last clear chance as charged to the jury. Therefore, we affirm the district court's judgment denying Cox's Rule 50(b) motion on the doctrine of last clear chance as to all defendants.

### D.

Finally, gross negligence and punitive damages. The jury neither found Cox grossly negligent nor awarded punitive damages to Plyler. Cox nonetheless renewed its Rule 50(b) motion and argued that no reasonable jury could have found gross negligence or awarded punitive damages, and that it was therefore entitled to judgment as a matter of law. The district court denied that motion, disagreeing with Cox's read of the evidence. Now, Cox appeals that determination and presses the same evidence-sufficiency argument.

Even assuming the district court somehow erred by denying Cox's Rule 50(b) motions as to punitive damages and gross negligence, such an error was almost assuredly harmless. That is because Cox prevailed on these two matters, and a reversal of the district court's ruling would leave the farm in the same position. *See* Fed. R. Civ. P. 61 (error must affect party's "substantial rights"). We therefore affirm the district court's denial of Cox's Rule 50(b) motion as to gross negligence and punitive damages.

\* \* \* \* \*

16

In conclusion, we affirm the district court's summary judgment rulings and its denial of Cox's Rule 50(b) motion for judgment as a matter of law.

## III.

We now address Cox's arguments regarding the district court's evidentiary rulings. In conjunction with its post-verdict Rule 50(b) motion for judgment, Cox also moved for a new trial under Rule 59. Relevant to this appeal, Cox contended that the district court abused its discretion by denying its motion to bifurcate the trial into a liability phase and a damages phase and by admitting portions of Plyler's safety expert's testimony. And Cox in turn contends that these errors so infected the judgment that a new trial is required. We address the asserted errors below and conclude the district court acted within its discretion when it denied Cox's motion for a new trial.

We review the district court's ruling on a motion to bifurcate a trial for an abuse of discretion. *See Dixon v. CSX Transp., Inc.*, 990 F.2d 1440, 1443–45 (4th Cir. 1993). We also examine the district court's admission of expert evidence for an abuse of discretion. *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 280 (4th Cir. 2021). Finally, "[w]hen a district court denies a motion for a new trial, we employ a deferential abuse-of-discretion standard, reversing the court's judgment only in 'exceptional circumstances.'" *Hicks v. Ferreyra*, 64 F.4th 156, 171 (4th Cir. 2023) (quoting *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 346 (4th Cir. 2014)). A court abuses its discretion "when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of

discretion, relies on erroneous factual or legal premises, or commits an error of law." *Id.* (quoting *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018)).

## A.

We will take up the denied motion to bifurcate first. On appeal, Cox contends that it was prejudicial to present information to the jury about the farm's finances, evidence which it states indicated "tens of millions of dollars in assets" including "cash on hand of approximately $1 million." Opening Br. 48. Therefore, the farm contends, it "cannot be said with any assurance that such financial information did not affect the judgment" of the jury when deciding whether the farm should be held liable for Plyler's injury, and that it was an abuse of discretion to deny the motion to bifurcate. *Id.* at 50.

The trial court possesses discretion to bifurcate a trial into a liability phase and damages phase "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Cox, as the party requesting separate trials, "bears the burden of convincing the court that such an exercise of its discretion will (1) promote greater convenience to the parties, witnesses, jurors, and the court, (2) be conducive to expedition and economy, and (3) not result in undue prejudice to any party." *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 975 (4th Cir. 2020) (quoting *F & G Scrolling Mouse, LLC v. IBM Corp.*, 190 F.R.D. 385, 387 (M.D.N.C. 1998)). We have described bifurcation as "a case-specific procedural matter within the sole discretion of the trial court" in the federal system. *McKiver*, 980 F.3d at 974 (quoting *Nester v. Textron, Inc.*, 888 F.3d 151, 162 (5th Cir. 2018)). And although North Carolina statute mandates bifurcation in certain

18

circumstances, "a district court is simply not bound by state law when deciding whether to bifurcate." *Id.* (quoting *Nester*, 888 F.3d at 163).

We conclude that the district court acted within the bounds of its discretion. In denying Cox's motion, it found that Cox had not made a showing in favor of bifurcation and noted that providing limiting instructions would "eradicate" the potential of unfair prejudice. J.A. 580. Cox focuses on the heightened risk of prejudice on appeal, arguing that the introduction of financial data "raised a real risk that the jury would use information about Defendants' wealth in an impermissible way in determining liability and compensatory damages." Opening Br. 48. Indeed, "[t]he Supreme Court has reminded us that 'the presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences.'" *McKiver*, 980 F.3d at 975 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003)).

The matter of punitive damages was submitted to the jury in this case, and "[a] defendant's financial position is a proper consideration in assessing punitive damages." *Id.* at 976 (quoting *Stamathis v. Flying J. Inc.*, 389 F.3d 429, 442 (4th Cir. 2004)); *see also Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 21–22 (1991). And while the two issues could still be tried separately at the court's discretion, it also properly recognized the general efficacy of limiting instructions. Courts consistently recognize that "juries are presumed to follow the court's instructions," and the Supreme Court has also emphasized that the jury system is premised upon the notion that "rationality and careful regard for the court's instructions will confine and exclude jurors' raw emotions." *CSX Transp., Inc. v.*

19

*Hensley*, 556 U.S. 838, 841 (2009) (per curiam).  *See also United States v. McLean*, 182 F. App'x. 165, 166 (4th Cir. 2006) (unpublished) (noting mitigation of prejudice through limiting instructions).  In this case, the district court provided a limiting instruction that this evidence was for use in ascertaining punitive damages, not for determining liability.

Cox does not raise arguments in support of bifurcation besides its emphasis on the potential for prejudice, but as we have explained, in the proper case limiting instructions can greatly reduce that risk.  This is such a case.  The district court did not abuse its discretion when it denied Cox's bifurcation motion.

B.

Cox also challenges other evidentiary rulings made in the trial court.  It argues that the court erred by admitting "irrelevant and unreliable expert testimony" from Plyler's expert witness, Jeffrey Decker.  Opening Br. 50.  To that end, it contends the district court failed to abide by its *Daubert* gatekeeping obligation because it permitted improper testimony about OSHA regulations and the standard of care and because it permitted improper testimony about the safety of the steel sump doors.  The admission of expert evidence is reviewed for an abuse of discretion.  *Sardis*, 10 F.4th at 280.  We address these arguments in turn and conclude the district court acted within its discretion when it ruled as it did.

The Federal Rules of Evidence provide that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's

20

scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under this rule, "a district court must ensure that the expert is qualified and that the expert's testimony is both relevant and reliable." *United States v. Smith*, 919 F.3d 825, 835 (4th Cir. 2019). "In performing this gatekeeping role, a district court 'is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule.'" *Id.* (quoting *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig. (No II)*, 892 F.3d 624, 631 (4th Cir. 2018)). As previously noted, we "apply an abuse-of-discretion standard" when reviewing a trial court's decision to admit or exclude expert testimony. *Wickersham v. Ford Motor Co.*, 997 F.3d 526, 531 (4th Cir. 2021) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). "Any abuse of discretion is reviewed for harmless error, and a new trial is required only when the admission of evidence affected the substantial rights of a party." *Id.*

Cox does not directly challenge Decker's qualifications to testify regarding matters of farm safety.[3] At trial, the court qualified Decker as an expert witness without objection in that area of expertise. Cox first argues, however, that the district court "abandon[ed] the

---

[3] Decker's CV shows that he worked in grain handling safety, design, and sales for approximately 20 years before beginning work as a farm and industrial safety consultant in 2013. He is also professionally affiliated with several grain handling safety and industrial technology organizations.

21

gatekeeping function," Opening Br. 51, when it allegedly "stat[ed] that such matters were arguments for the jury." *Id.* at 53. Put differently, Cox argues that the district court allowed the jury to weigh the relevance and reliability of Decker's testimony about OSHA regulations and the steel sump door, when those are determinations should have been left to the court.

Cox is correct that district courts' "'broad discretion' in analyzing reliability ... does not include the decision 'to abandon the gatekeeping function.'" *Sardis*, 10 F.4th at 282 (quoting *Nease v. Ford Motor Co.*, 848 F.3d 219, 230 (4th Cir. 2017)). But that is not what occurred here. As Plyler points out, the record indicates that the court considered the parties' respective arguments regarding Decker's testimony, and the court implicitly accepted the testimony's relevancy and reliability in permitting its introduction at trial. Rather than improperly delegating that decision to the jury, the court instead left it to the jury to weigh the *probative value* of the content of regulations against evidence of Cox's actions in assessing whether it was negligent. That was not error.

Nor was it error, as Cox contends, to permit the introduction of OSHA regulations as evidence. In *Albrecht v. Balt. & Ohio R.R. Co.*, 808 F.2d 329, 332 (4th Cir. 1987), we considered a similar situation in which "[t]he district court read to the jury certain OSHA regulations bearing on the accident at hand" and accompanied that reading with a limiting instruction. We determined the court had not committed reversible error, though we did state that the instruction the district court offered could have even further clarified that evidence's proper role with an instruction that the jury may consider violations of a regulation only as "evidence of negligence." *Id.* In this case, the district court provided

22

limiting instructions explaining that the jury should "consider those OSHA regulations really as guidance." J.A. 1248. It also instructed that the jury "may consider [evidence about a regulatory violation] as evidence of negligence. However, a violation of OSHA regulations does not per se constitute negligence in and of itself." *Id.* Further, the court later reminded the jury of the proper use of this testimony after an objection Cox made to Decker's response to a question on the witness stand. *See id.* at 1273.

Taking the nature of the testimony offered and the district court's limiting instruction together, we conclude the district court did not abuse its discretion. Nor are we convinced otherwise by Cox's reference to our decision in *Adalman v. Baker, Watts & Co.*, 807 F.2d 359 (4th Cir. 1986), *abrogated on other grounds by*, *Pinter v. Dahl*, 486 U.S. 622, 649–54 & n.25 (1988). In *Adalman*, we emphasized that an expert may not opine on the meaning and applicability of securities laws when such law was in issue, in the same way a tort lawyer ought not "offer[] their expert opinions to the jury as to the meaning and applicability of the laws governing tort litigation." *Id.* at 365–66. Here, Decker, as a farm safety expert, offered testimony which placed Cox's actions in the context of safety regulations established by a government agency, and the district court properly drew a line instructing the jury not to take the context of those regulations as per se evidence of negligence. The district court did not abuse its discretion.

Finally, Cox also contends that the district court erred because it permitted Decker to testify that the steel door covering the sump was not a sufficient door because it could "roll open if you step down" onto it. J.A. 1292. Decker conceded he did not test the sump

23

door in Grain Bin #2, but rather based his opinion upon his experience working in the field of grain safety.

We need only look to the Federal Rules of Evidence to conclude the district court did not abuse its discretion here. Rule 703 permits an expert to base their opinion upon "facts or data in the case that the expert has been made aware of or personally observed." Although Decker did not step onto the steel door, he explained that he did not understand those doors, based upon his experience working and consulting in the industry, to be a sufficient guard because they may open due to vibration or other factors. He also testified that he had observed similar doors open without external input. Lastly, we note that the jury was free to weigh Decker's more generalized opinion regarding those doors with testimony elicited that he did not personally stand on the door in Grain Bin #2 in weighing the probative value of his expert testimony. The district court did not abuse its discretion by permitting this testimony.

### C.

Cox last argues that these purported evidentiary errors so affected the jury's verdict that a new trial is required under Rule 59. However, as we have just explained, we conclude the district court's evidentiary decisions do not constitute reversible error. Therefore, concluding it did not abuse its discretion, we affirm the district court's denial of Cox's motion for a new trial.

IV.

We affirm the district court's denial of Cox's motions for summary judgment, judgment as a matter of law, and for a new trial. We therefore affirm the jury's verdict in full. Because we do not order a new trial, we do not reach Plyler's cross-appeal issue regarding OSHA-related testimony. The judgment of the district court is

*AFFIRMED.*